Fuld, J.
The four Brennan brothers, George, Harold, John and William, instituted this article 78 proceeding in August of 1958 to obtain judicial review of a determination made by the Waterfront Commission, after a hearing, which (1) denied applications by each of them for inclusion in the Longshoremen’s Register as checkers; (2) revoked their temporary registrations as such checkers; and (3) removed each of them from the Longshoremen’s Register as longshoremen, with leave to reapply immediately for registration as longshoremen.[1] The petitioners and their father •—not a petitioner herein—were employed for many years before the present proceeding was instituted by the Bay Ridge Operating Company at Pier 4, Bush Terminal, Brooklyn. The father, Michael, is hiring agent and dock boss in charge of checkers; George was a checker and, in addition, a union shop steward for clerks and checkers on Pier 4; Harold was an assistant dock boss and, after May, 1957, a dock boss in charge of assigning work to checkers; and William was a checker.
Prior to the enactment of the Waterfront Commission Act in 1953, no license or permit was required to work on the docks either as a longshoreman or as a checker. The 1953 Act, however, required the Waterfront Commission to establish a “ long *20 shoremen’s register” of all longshoremen eligible for employment in the Port of New York district (L. 1953, ch. 882, part I, art. VIII, subd. 1), and in 1957 the statute was amended to require the commission to “ establish within the longshoremen’s register a list of all qualified longshoremen eligible * * * for employment as checkers ” (§ 5-n, subd. 1, as added by L. 1957, ch. 188, § 6). The provision for the registration of checkers is very similar to that for the registration of longshoremen; both establish conditions of eligibility, set up a procedure for the filing of applications and permit the commission to issue temporary registrations pending final action on any such application. It should be ' noted, however, that the standard of eligibility as a checker is higher than that as a longshoreman, requiring as it does that the ‘ ‘ applicant possesses good character and integrity ” (§ 5-n, subd. 3, par. [2]).
Upon the enactment in 1957 of the provision relating to the registration of checkers, each of the Brennan brothers, already registered as a longshoreman, filed an application with the commission for registration as a checker and, in May of 1957, the commission issued temporary checker registrations to all four of them. Some months later, in October, 1957, in accordance with its usual practice, the commission initiated proceedings to determine whether (1) to grant their application as checkers, (2) to revoke or suspend their temporary checker registrations, and (3) to revoke or suspend their registration as longshoremen. Following the statutory procedure specified in the Waterfront Commission Act (part I, art. XI), the commission issued a notice of hearing, in which the petitioners were charged with specific acts of misconduct, and held a hearing before a hearing officer at which the petitioners Avere present, Avith counsel. After eight days of taking testimony, the hearing officer made findings which in every respect, except one, bore out the commission’s charges and, on his recommendation and findings, the commission issued the orders which are the subject of this article 78 proceeding.
In general terms, the commission’s notice of hearing charged that, in the period from December, 1953 to May, 1957, the Brennan brothers had “ combined and confederated Avith each other to unlawfully prevent other persons from exercising their lawful trade and doing lawful acts, by force, threats and intimi *21 dation, with a view to controlling the checking operations on Pier 4, Bush Terminal, Brooklyn, New York, and to compelling other persons to abstain from doing acts which such other persons had a lawful right to do and to coerce persons to do acts they had a right not to do, all in violation of Sections 580 and 530 of the Penal Law of the State of New York”. This general charge was substantiated by proof that on at least three occasions the Brennans had used force and threats of force and, on one occasion, a work stoppage to control the pier for their own interests and ends. Three office employees, Carlson, Little and Barrett, whose work required them to go on the pier occasionally, were each told by the Brennans, in profane and highly threatening language, for instance, to Stay off the dock. If you don’t, I will kill you and, in the case of one of these men, there was evidence that he was assaulted by one of the brothers while the others stood by repeating their angry warnings. In each case, the intimidation succeeded, and the men concerned did not thereafter go on the pier without the Brennans’ prior approval.
The other significant instance of the success of these tactics of force concerned the appointment of one of the brothers as the second dock boss, the other one being Brennan, Sr. Harold Brennan was appointed by Walker, the pier Superintendent, as the second dock boss after a work stoppage was called by George with the express purpose of gaining Harold’s appointment. This appointment was made despite the fact that Walker did not believe that another dock boss was required and despite the fact that, even if one were required, he did not think Harold should have been chosen.
Viewing the evidence as a whole, the Waterfront Commission was justified in concluding that the presence of each of the Brennan brothers at the piers "constitute [s] a danger to the public peace or safety” (Waterfront Commission Act, part I, art. VIII, subd. 3, par. [c]) and that they each lack "good character and integrity ” (§ 5-n, subd. 3, par. [a]). This being so, the commission’s determination as to both longshoreman and checker registration may not be successfully attacked.
Although the Appellate Division concluded that "a reasonable basis exists for the [commission’s] determination ”, the three-man majority, nevertheless, felt obliged to modify" so *22 much of the determination as precludes petitioners forever from seeking inclusion in the Longshoremen’s Register as checkers [as] excessive punishment tantamount to an abuse of discretion ’ ’. The modification consisted of adding to the first and second paragraphs of the commission’s orders—relating to checker registration — a provision granting petitioners “leave to reapply for inclusion” in the register as checkers.
The first two paragraphs of the order made by the commission in this case direct
“That the applications of [the four Brennans] for inclusion in the Longshoremen’s Register as checkers be and they hereby are each denied; * * *
‘ ‘ That the temporary registrations as checkers heretofore issued to [the four Brennans] be and they hereby are each revoked ’ ’.
To say that these two paragraphs preclude “petitioners forever from seeking inclusion in the Longshoremen’s Register as checkers ”, as the Appellate Division did, constitutes a misinterpretation not only of the terms of the order, but also of the commission’s power under the statute (part I, art. XI, subd. 6).
As we read them, neither the first nor second paragraph of the order permanently bars the petitioners from seeking inclusion in the register as checkers. The first paragraph simply denied the applications, with no word at all as to future applications, while the second paragraph merely revoked the temporary registrations. The only paragraph of the commission’s order which directly related to the petitioners’ future rights was the third paragraph which “permanently removed [the petitioners] from the Longshoremen’s Register * * * with leave to reapply immediately for registration as longshoremen ” — and this paragraph was not modified by the Appellate Division. Our interpretation is borne out by the fact that, although the statute empowers the commission to “ remove [any registered checker] from the longshoremen’s register as a checker for such period of time as it deems in the public interest ” (§ 5-n, subd. 5), the commission’s power on the determination of an application is expressly limited by the following statutory *23 language: ‘ ‘ The action in the case of an application for a license or registration shall be the granting or denial thereof ’ ’ (part. I, art. XI, subd. 6). In other words, the commission is empowered to revoke a license already outstanding for a specified period or permanently—as it did in the third paragraph of its determination—but it is empowered only to grant or to deny applications, and this is, in fact, all it did in the case of the checker registration applications. Thus, no inference as to the possibility of a future application as a checker may be drawn from the fact that longshoremen registration was ‘ ‘ permanently removed * * * with leave to reapply immediately”, while checker registration was simply denied.
Nor was there warrant for the Appellate Division’s modification of the second paragraph of the commission’s order. Indeed, granting leave to the Brennans to reapply for temporary registration as checkers is proscribed by the Waterfront Commission Act, for, the statute explicitly recites, the commission is empowered to grant a temporary registration as a checker only ‘ ‘ pending final action on an application * * * for a period * * * not in excess of six months ” (§ 5-n, subd. 4). In view of the fact that final action on the application had been taken, and in view of the further fact that, in any event, six months had passed since the Brennans’ temporary registration had been granted, the commission was required by statute to revoke the temporary registration. A modification granting leave to reapply for such temporary registration is, therefore, beyond the law.
Thus, the Waterfront Commission’s determination, and this construction reflects the commission’s own view, does not bar the Brennans from reapplying for registration as checkers and, insofar as the Appellate Division modification was designed to give them this right, it was unnecessary. It is to be noted, however, that any future application by the Brennans will be governed by section 1.13 of the commission’s regulations which prescribes that, ‘ ‘ After an application or petition has been denied * * * no further application therefor may be submitted except upon leave of the commission for good reason shown”. (N. T. Off. Comp, of Codes, Rules & Regulations [12th Off. Supp., 1959], p. 1106.) If the modification of the commission’s order was intended to circumvent the requirement *24 that reapplication may be made solely ‘ ‘ upon leave of the commission for good cause shown ”, it represents an unwise and unjustified interference with the broad rule-making power vested in the commission by the Legislature (Waterfront Commission Act, part I, art. IV, subd. 7).
In sum, then, the commission had the power under the Waterfront Commission Act but to grant or deny an application for checker registration, and the first paragraph of its order is in fact an order of denial, not one prohibiting future applications. And, as to the second paragraph of its order revoking the Brennans’ temporary checker registrations, the commission simply directed what the statute mandated. It follows, therefore, that the Appellate Division’s modification was not permissible.
The Appellate Division order, insofar as it modified the determination of the Waterfront Commission, should be reversed, without costs, and the determination of the commission confirmed and reinstated.
Chief Judge Desmond and Judges Dye, Froessel, Van Voorhis, Burke and Foster concur.
Order of Appellate Division reversed, without costs, and the determination of the Waterfront Commission reinstated.

. A checker, as defined in the Waterfront Commission Act (L. 1953, eh. 882, § 5-a, snbd. [5], as amd. by L. 1957, eh. 188, § 1), is “a longshoreman who is employed to engage in direct and immediate checking of waterborne freight or of the custodial accounting therefor or in the recording or tabulation of the hours worked at piers or other waterfront terminals by natural persons employed by carriers of freight by water or stevedores.”